NOT RECOMMENDED FOR PUBLICATION
File Name: 13a0717n.06

No. 12-1214

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Aug 06, 2013
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| WILLIAM TATE, ET AL., | ) |
| Plaintiffs-Appellants, | ) ON APPEAL FROM THE UNITED |
| | ) STATES DISTRICT COURT FOR |
| v. | ) THE EASTERN DISTRICT OF |
| | ) MICHIGAN |
| GENERAL MOTORS LLC, | ) |
| Defendant-Appellee. | ) |

Before: SILER, MOORE, and ROGERS, Circuit Judges.

SILER, Circuit Judge. Appellants, executive retirees ("Retirees") of General Motors LLC ("GM"), brought suit against GM pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(1)(B), challenging an adverse determination of their entitlement to benefits under GM's Executive Retirement Plan ("ERP" or the "Plan"). For the reasons explained below, we **AFFIRM** the district court's grant of GM's motion to dismiss.

I.

The Retirees are participants in and/or beneficiaries of GM's ERP. The ERP is an unfunded, non-qualified, retirement benefit plan that provides deferred compensation for a select group of management or highly compensated employees. In 2008, as a condition of its bankruptcy and its subsequent purchase by the United States Treasury, GM was required to cut certain retirement benefits, including two-thirds of particular ERP benefits exceeding $100,000. The calculation of the

No. 12-1214
*Tate v. General Motors*

ERP reduction is the source of controversy in this lawsuit. The key provision, Article IV Section II (g) of the Plan, reads:

> [F]or executive retirees who have a combined tax-qualified SRP plus non-qualified benefit under this Plan in excess of $100,000 per annum on a life annuity basis, the amount of benefits under this Plan over the combined $100,000 per annum threshold shall be reduced by 2/3rds.

In 2010, in accordance with the ERP's Claim and Denial procedures, Retirees sought a redetermination of their benefits received under the ERP. They treated GM's subsequent failure to respond within 60 days as a denial and filed an appeal with the Executive Compensation Committee ("ECC") for the Board of Directors in 2011. GM responded, denying the claims. In its response, GM misquoted the ERP terms and omitted from the key provision the second appearances of the phrase "under this plan," and the word "threshold." A few months later, when the ECC also responded denying the appeals, it too omitted these same terms and misquoted the provision.

Following these denials, Retirees filed suit against GM in the United States District Court. They asserted in Count 1 that GM failed to properly calculate their benefits in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). They argued that GM incorrectly interpreted the key provision of Article IV Section II (g), which led to an erroneous calculation of their ERP benefits. In Count 2, Retirees asserted that GM, as plan administrator, failed to provide them with required plan information within 30 days of their request, as required under ERISA § 501(c)(1), 29 U.S.C. § 1132(c)(1). Retirees insisted that GM, as the plan administrator, is subject to a penalty for this procedural error.

No. 12-1214
*Tate v. General Motors*

GM moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the key provision is unambiguous and that GM's interpretation is the only plausible and reasonable interpretation. To its motion, GM attached several documents supporting its interpretation of the provision. The district court granted GM's motion, finding that Retirees' interpretation of the provision was implausible.

## II.

We review a district court's grant of a motion to dismiss *de novo*. *Orton v. Johnny's Lunch Franchise*, LLC, 668 F.3d 843, 846 (6th Cir. 2012). Where, as here, a policy grants a plan administrator discretion to interpret the policy, our decision is limited to a determination of whether the denial of benefits was arbitrary and capricious. *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 694 (6th Cir. 1989). This standard is not altered by the existence of GM's inherent conflict of interest created by acting as both the administrator and issuer of the Plan, but we consider it "a factor in determining whether the [plan administrator's] decision was arbitrary and capricious." *Id.* at 694.

### A.

In order to survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Count 1 of the amended complaint alleges that GM wrongfully denied Retirees additional benefits in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). Retirees claim they are entitled to these benefits under Article IV Section II of the Plan. GM argues that the key provision at issue is unambiguous because it is only open to one reasonable interpretation–that ERP benefits under the Plan are subject to a two-thirds reduction when a combination of SRP benefits and

- 3 -

No. 12-1214
*Tate v. General Motors*

ERP benefits together exceed a $100,000 threshold. Retirees counter that the provision should be read as comprising two distinct parts, separated by the comma approximately midway through the paragraph. They contend that the first part is the condition precedent which renders the provision applicable to only employees who have (1) an SRP *and* (2) an annual ERP benefit in excess of $100,000. Thus, the $100,000 threshold applies only to ERP benefits, not SRP benefits.

After reviewing Retirees' position, the plan administrator denied their claims, concluding that their "proposed interpretation of the Plan language [was] inconsistent with both the Plan language and its intended application." The primary issue before us is whether Retirees have shown that the plan administrator's interpretation is arbitrary and capricious. The crux of the parties' disagreement on this issue is the effect of the word "combined" in the provision.

ERISA plan provisions are interpreted "according to their plain meaning, in an ordinary and popular sense." *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 556 (6th Cir. 1998). As defined by the *Oxford English Dictionary*, the term "combined," as referenced by both parties, means "possess[ed] or exhibit[ed] in union," "coupled," "united," and "[r]esulting from, or produced by, combination." 515-16 (2d ed., 1989). Thus, the provision's first clause referring to "executive retirees who have a *combined* tax-qualified SRP plus non-qualified benefit under this Plan in excess of $100,000 per annum on a life annuity basis," must indicate the union or sum of more than one part. The parties agree that these two parts are the "tax-qualified SRP" and "non-qualified benefit under this Plan," and their dispute turns on whether the final phrase "in excess of $100,000" refers to only the latter non-qualified benefit or a combination of both the tax-qualified SRP *and* non-qualified benefit.

- 4 -

No. 12-1214
*Tate v. General Motors*

If this were the only challenged portion of the provision, Retirees' insistence that the former interpretation be adopted might be plausible. However, the provision goes on to state in the second clause that for retirees to meet this requirement, "the amount of benefits under this Plan over the *combined* $100,000 per annum threshold shall be reduced by 2/3rds." The word "combined," as it appears in the second clause must, again, in keeping with its ordinary meaning, refer to a union or combination of multiple parts. Thus, the threshold, as determined by the provision's first clause, must comprise two items which, in sum, exceed $100,000. GM's interpretation is wholly consistent with this conclusion, while Retirees' interpretation renders the second appearance of "combined" meaningless because it eliminates the necessity of having two parts which, when added together, exceed $100,000.

Retirees attempt to save their argument by relying on the last antecedent rule, a principle of contract interpretation which provides that "a limiting clause or phrase . . . should ordinarily be read as modifying only the noun or phrase that it immediately follows." *Cracker Barrel Old Country Store, Inc. v. Cincinnati Ins. Co.*, 499 F. App'x 559, 564 (6th Cir. 2012) (citations omitted). Under this rule, Retirees insist that the clause "in excess of $100,000" applies only to non-qualified benefits, since this item appears just before the modification. However, they overlook that "[l]ike all canons of interpretation, the rule of the last antecedent can be overcome by textual indication of contrary meaning." *Decker v. Nw. Envtl. Def. Ctr.*, 133 S. Ct. 1326, 1343-44 (2013). Here, the appearance of "combined" twice in the provision indicates that the $100,000 threshold comprises more than one item, which can only be read to reference tax-qualified SRP benefits and non-qualified ERP benefits

No. 12-1214
*Tate v. General Motors*

because these are the only two items referenced in the provision. This textual indication supersedes a contrary reading under the last antecedent rule.

**B.**

Retirees next argue that the provision is ambiguous because the term "SRP" is not defined within the Plan. However, this does not create a material ambiguity within the provision. *See Witmer v. Acument Global Techs., Inc.*, 694 F.3d 774, 778 (6th Cir. 2012). The definition of "SRP" does not implicate Retirees' interpretation of the Plan and they do not explain how a failure to define "SRP" affects their claimed benefits. For this reason, the Plan's failure to define "SRP" does not save Retirees' argument or deem the provision ambiguous.

**C.**

The ERP falls into a category of retirement benefit plans commonly known as "top hat" plans. While "top hat" plans are governed by ERISA, they are not subject to many of the substantive standards required of other retirement plans, such as participation, vesting, accrual, funding, fiduciary responsibility, disclosure, and reporting. *Simpson v. Mead Corp.*, 187 F. App'x 481, 483-84 (6th Cir. 2006) (citations omitted). These exceptions are made in recognition of the ability of high level employees to influence or negotiate elements of their compensation packages, eliminating the need for protections afforded other employees under ERISA. *Bakri v. Venture Mfg. Co.*, 473 F.3d 677, 678 (6th Cir. 2007).

Retirees argue that because this case involves a top-hat plan, the district court applied an erroneous "plausibility" standard and should have allowed more factual development of the record or extrinsic evidence before ruling on GM's motion to dismiss. Although top-hat plans are largely

No. 12-1214
*Tate v. General Motors*

exempted from ERISA, we have not extended the exemption so far as to demand that district courts admit extrinsic evidence before dismissing a plaintiff's claims. "When interpreting ERISA plan provisions, general principles of contract law apply . . . ." *Lipker v. AK Steel Corp.*, 698 F.3d 923, 928 (6th Cir. 2012). We have consistently stated that extrinsic evidence should only be admitted after a provision has been found to be ambiguous. *See Pollet v. Rinker Materials Corp.*, 477 F.3d 376, 380 (6th Cir. 2007). Thus, Retirees' argument that extrinsic evidence is needed at this stage of litigation fails because, as explained above, they have not first established that the provision is ambiguous.

While Retirees insist that extrinsic evidence should be admitted at this stage of litigation, they argue in the same breath that the district court erred in permitting GM to attach documents outside the administrative record to its motion to dismiss. Although GM did attach extrinsic evidence in support of its interpretation of the Plan, the district court found Retirees' interpretation implausible and the provision unambiguous. Therefore, the district court never considered the documents submitted by defendant on this issue. The challenge to GM's submission of extrinsic evidence fails because the evidence did not affect the district court's ruling. Even assuming it did, however, we affirm because, after our independent review of only the amended complaint and its attachments, it is clear that Retirees failed to state a plausible claim for relief.

### D.

As a final matter, Retirees contend they allege facts showing procedural shortcomings in GM's review process which warrant substantive remedies. They note specifically that the plan administrator was untimely in issuing its interpretive ruling and in presenting the issue to the ECC for review, and that both the plan administrator and the ECC blatantly misquoted the Plan language.

- 7 -

No. 12-1214
*Tate v. General Motors*

What Retirees do not offer is how a slight misquoting of the provision affects either the quality of review given to their claims or their entitlement to benefits. Procedural violations warrant substantive remedies "only when some useful purpose would be served." *Kent v. United of Omaha Life Ins. Co.*, 96 F.3d 803, 807 (6th Cir. 1996) (citations omitted). Accordingly, determinations of benefits will still be upheld where plan administrators substantially comply with ERISA, even where mere technical or procedural defects are present. *Id*. at 808. Because Retirees do not show that the procedural errors they allege affect the substance of their claims, they are not entitled to substantive remedies from the court.

    **AFFIRMED.**

# UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

|  | 100 EAST FIFTH STREET, ROOM 540 |  |
|---|---|---|
| Deborah S. Hunt | POTTER STEWART U.S. COURTHOUSE | Tel. (513) 564-7000 |
| Clerk | CINCINNATI, OHIO 45202-3988 | www.ca6.uscourts.gov |

Filed: August 06, 2013

Mr. Douglas Russell Cole
Organ Cole + Stock
1335 Dublin Road
Suite 104D
Columbus, OH 43215

Mr. Shay Dvoretzky
Jones Day
51 Louisiana Avenue, N.W.
Washington, DC 20001

Re: Case No. 12-1214, *William Tate, et al v. General Motors LLC*
Originating Case No. : 2:11-CV-12028

Dear Sir or Madam,

The Court issued the enclosed (Order/Opinion) today in this case.

Sincerely yours,

s/Jill Colyer
Case Manager
Direct Dial No. 513-564-7024

cc: Mr. Jonathan Kent Stock
Mr. David J. Weaver

Enclosure

Mandate to issue